UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMARA DAHN,

                                  Plaintiff,

            v.

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.
_____

<u>DECISION & ORDER</u>

18-CV-327P

**<u>PRELIMINARY STATEMENT</u>**

Plaintiff Amara Dahn ("Dahn") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income and Disability Insurance Benefits ("SSI/DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket ## 6, 20).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 15, 18). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

# DISCUSSION

## I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     Dahn's Contentions

Dahn contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 15-1, 19). Specifically, Dahn argues that the ALJ mischaracterized the record in evaluating the debilitating effects of her migraines, rendering his RFC assessment unsupported by substantial evidence. (Docket ## 15-1 at 14-18; 19 at 1-2). Dahn also claims that the ALJ erred by failing to evaluate whether she suffers from bipolar disorder at step two. (Docket # 15-1 at 20 n.3). Next, Dahn maintains that the ALJ's mental RFC assessment is flawed because he improperly relied upon the stale opinions of the agency consultants. (Docket ## 15-1 at 18-21; 19 at 2-3). Finally, Dahn maintains that the ALJ's physical RFC assessment is flawed because the ALJ discounted the only medical opinion of her physical capabilities contained in the record. (Docket ## 15-1 at 21-25; 19 at 3-4).

## III.    Analysis

### A.     The ALJ's Assessment of Dahn's Migraines

I turn first to Dahn's argument that the ALJ mischaracterized the record concerning her history of and treatment for migraines. (Docket ## 15-1 at 14-18; 19 at 1-2). The

4

ALJ determined that Dahn's migraines, although a severe impairment, did not cause any additional functional limitations because the medical record demonstrated that the impairment "did not require much more intervention on a regular basis" other than a few visits to the emergency department. (Tr. 21). According to the ALJ, treatment notes indicated "sporadic" treatment for migraines, primarily around the time of her patent foramen ovale closure procedure ("PFO procedure") in March 2015, and "specialized treatment with a neurologist," involving Botox injections, that did not begin until August 2016, approximately six months before the administrative hearing. (*Id.*).

Based upon my review of the record, I agree that the ALJ's one-paragraph discussion of the medical evidence relating to Dahn's migraines suggests that the ALJ overlooked or ignored the records reflecting Dahn's longstanding migraine treatment with neurologist Michael J. Battaglia ("Battaglia"), DO, which began as early as October 2011. (Tr. 520-21). At that time, Dahn suffered weekly headaches and bi-weekly migraines, characterized by prostration, nausea, photophobia, and phonophobia. (*Id.*). Battaglia prescribed daily prophylactic medication, as well as abortive medication to treat the onset of migraine-related symptoms. (*Id.*).

Battaglia and his staff continued to treat Dahn for migraine for the next five years. (Tr. 522-23, 525, 527, 529, 531, 533, 535-36, 538, 565, 570, 572, 576, 578-79, 592). While there were periods in which Dahn's medications successfully reduced the frequency and intensity of her migraines (Tr. 523, 525, 527, 533), she continued to experience migraines and medication side-effects, necessitating emergency department visits and modifications to her course of treatment by Battaglia. (Tr. 261-67, 273-75, 352, 369-72, 527, 531, 535-36, 538, 572). Although Battaglia expressed hope that the March 2015 PFO procedure would reduce the

5

incidence of Dahn's migraines (Tr. 565), the ALJ's suggestion that the timing of Dahn's migraine complaints primarily coincided with the PFO procedure is simply inaccurate. Rather, the entirety of her medical record reflects complaints of migraine pain, including during periods well before and well after the PFO procedure. (*See*, *e.g.*, 261-67, 273-75, 352, 520-21, 535-36, 538, 572).

Beginning in August 2016, Dahn began treatment with a new neurologist, Marc Frost ("Frost"), MD, at Dent Neurologic Institute, for several neurological issues, including ongoing migraines. (Tr. 788-91). At the time, she reported suffering three to six migraines per week, ranging in severity from mild to severe, with symptoms of nausea and vomiting. (*Id.*). Frost recommended treatment with a new medication regimen, Botox injections, occipital nerve blocks, and trigger point injections. (Tr. 784).

Although the ALJ mentions Battaglia by name in his decision (Tr. 20), he does so in the context of discussing Dahn's ankle and spine impairments, not in the context of her migraine headaches. The sole reference to Battaglia by name, and the context in which it was made, does not demonstrate the ALJ's understanding that Battaglia was a neurologist who had provided ongoing migraine management treatment to Dahn. Compounding the uncertainty is the fact that Battaglia's treatment records are interspersed in an exhibit containing treatment records from several other physicians, including an otolaryngologist, orthopedic surgeon, audiologist, and gastroenterologist. (*See generally* Tr. 519-92).

In other words, although Battaglia provided Dahn with ongoing treatment to address her migraine headaches from 2011 through 2016, the ALJ identified only her emergency department visits, "mentions" of migraine in her treatment notes, "sporadic" migraine treatment primarily in March 2015 that "appear[s] to coincide" with the PFO procedure, and her treatment

6

with neurologist Frost "that did not occur until August 2016." (Tr. 21). Thus, the majority of Dahn's migraine treatment, which occurred with Dr. Battaglia, is not discussed by the ALJ or even mentioned by him in support of his conclusions. This omission is especially concerning because Dahn testified that migraine-associated absences were her primary impediment to full-time employment. (Tr. 40). Although an ALJ is not required to discuss every piece of evidence submitted, and his failure to do so does not necessarily demonstrate that he did not consider the evidence, *see Santos v. Astrue*, 709 F. Supp. 2d 207, 211 (S.D.N.Y. 2010), "the ALJ may not ignore or mischaracterize evidence of a person's alleged disability." *Seignious v. Colvin*, 2016 WL 96219, *4 (W.D.N.Y. 2016) (alterations, citations, and quotations omitted). Indeed, where "the ALJ's supporting rationale for his . . . RFC assessment [is] based on several mischaracterizations of the record," the resulting RFC assessment is "legally flawed and unsupported by substantial evidence." *Seignious v. Colvin*, 2016 WL 96219 at *5; *see also King v. Colvin*, 2016 WL 1398987, *4 (W.D.N.Y. 2016) ("[w]here an ALJ mischaracterizes the evidence or relies on only the portions of the record that support a conclusion of 'not disabled,' a remand is necessary"); *Ellis v. Colvin*, 29 F. Supp. 3d 288, 302 (W.D.N.Y. 2014) ("[i]t was plainly improper for the ALJ to bolster his own RFC assessment with a blatant misstatement of the record").

    The ALJ's failure to acknowledge that Battaglia was a specialist, or that he provided regular, ongoing treatment for Dahn's migraines leads me to conclude that the ALJ likely overlooked or ignored the bulk of Battaglia's treatment notes. Further, because the ALJ relied upon the apparent absence of ongoing treatment with a specialist until 2016 in determining that Dahn's migraines did not interfere with her functioning, this Court cannot conclude that the ALJ's error in reviewing this evidence was harmless. *See Roscoe v. Berryhill*, 2018 WL

7

4519880, *8 (W.D.N.Y. 2018) ("[n]ot only could the additional . . . treatment records have affected the ALJ's RFC determination, but they also might have altered his credibility assessment, as well as his assessment of the proper weight to be afforded to the medical opinion[s] [of record]"); *Vasquez v. Berryhill*, 2018 WL 824183, *3 (D. Conn. 2018) (remanding for new credibility determination and re-weighing of opinion evidence based on ALJ's "factually inaccurate" reading of the record related to his view that plaintiff only engaged in "conservative treatment"); *see also George v. Comm'r of Soc. Sec. Admin.*, 2019 WL 608850, *3-4 (W.D.N.Y. 2019) (ALJ "plainly" misstated treatment notes from treating physician regarding observations that were "important – and indeed material – to the ALJ's evaluation of [claimant's] claims" of disability; "[u]nder the circumstances, there is good reason to conclude that the ALJ's determination was indeed affected by this misstatement of the record"). "Under such circumstances, I conclude that remand is appropriate to permit the ALJ to consider the entirety of [the treatment notes] and to determine whether such consideration affects the determination of disability." *Roscoe v. Berryhill*, 2018 WL 4519880 at *8.

### B. Dahn's Remaining Contentions

As noted above, Dahn advances several other arguments she believes require remand. In light of the findings discussed above, however, the Court need not reach Dahn's remaining contentions. *See*, *e.g.*, *George v. Comm'r of Soc. Sec. Admin.*, 2019 WL 608850 at *3 ("[b]ecause this [c]ourt finds that remand is required by the ALJ's material factual inaccuracy, it does not address [claimant's] latter two arguments"). Although I do not reach the remaining contentions, on remand the ALJ should consider whether Dahn's bipolar disorder should be evaluated at step two, and whether updated medical opinions are warranted in view of the ALJ's

8

observation that Dahn experienced "a significant decline in functioning" (Tr. 21) after the opinions – which are the only opinions of record – were issued.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 18)** is **DENIED**, and Dahn's motion for judgment on the pleadings **(Docket # 15)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                                  *s/Marian W. Payson*
                                                MARIAN W. PAYSON
                                        United States Magistrate Judge

Dated: Rochester, New York
         August 29, 2019